IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01991-WDM-KLM

PIVOTAL COLORADO, II, LLC, a Delaware limited liability company,

    Plaintiff,

v.

TRIPLE M BETEILIGUNGS-GMBH & CO KG,

    Defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on Motion for Partial Summary Judgment (doc no 91) filed by Plaintiff Pivotal Colorado II, LLC ("Pivotal") and the Motions for Partial Summary Judgment (doc nos 87 and 90) filed by Defendant Triple M Beteiligungs-GMBH & CO KG ("TMK"). I have reviewed the parties' written arguments and find oral argument is not required. For the reasons that follow, Pivotal's motion will be granted in part and denied as moot in part. TMK's motions will be denied.

### Background[1]

This is a contract dispute regarding a promissory note and related documents arising from the sale of a large tract of land in Parker, Colorado. Pivotal is part of a family of companies, referred to as the Pivotal Group, that develops master planned communities. In December 2004, entities associated with the Pivotal Group purchased

---

[1]The facts set forth here are taken from the parties' briefs and exhibits and are undisputed unless otherwise noted.

approximately 3000 acres of land from the original developer, SunMarke Communities, Inc. All of the selling entities were owned by members of the Nixdorf family. As part of the purchase, Pivotal executed a $30 million promissory note (the "Note") in favor of TMK, an entity associated with the sellers, which now holds the Note. The Note is secured by a deed of trust encumbering approximately 1500 acres of the total property ("Deed of Trust"). The Note provides that if an "Event of Default" occurs, as defined in the Deed of Trust, the entire amount owed on the Note may be accelerated and due, with interest. Note, Exh. B to Pivotal's Motion for Partial S.J. (doc no 92-3) at ¶ 5.

At the time of purchase, the land was subject to a Town of Parker planned development zoning ordinance that provided for development under a master plan consisting of a development map ("SunMarke Development Plan") and development guide ("SunMarke Development Guide"). The Deed of Trust, which was specifically negotiated by the parties, contains several provisions regarding rezoning issues. Deed of Trust, Exh. C to Pivotal's Motion for Partial S.J. (doc no 92-4). Paragraph 9(a) of the Deed of Trust sets forth the parties' rights and obligations as follows:

> [Pivotal may], without the consent of [TMK] and in compliance with applicable law, and without the payment of any separate or additional consideration to [TMK] . . . [c]ause the property or portions thereof to be rezoned; provided that [TMK's] consent shall be required for any rezoning that eliminates a land use permitted under currently-existing zoning or that reduces the total number of residential units authorized under currently-existing zoning (and, if [TMK's] consent to rezoning is required under the immediately preceding paragraph, [TMK] may withhold its consent in its sole discretion if the rezoning would materially adversely affect the value of the property, but may not otherwise unreasonably withhold, condition or delay the grant of such consent).

*Id.*

The Deed of Trust also contains notice and cure provisions to be followed before a party can declare default. Specifically, default for breach of any of the covenants of the Deed of Trust occurs only if Pivotal fails to cure any breach of its obligations (a) within thirty days after receiving written notice of such a breach, or (b) within a reasonable time after expiration of the thirty day time period if Pivotal begins its cure efforts within that thirty day period. Deed of Trust, ¶ 4(b). The second time limit is set forth as follows:

> [I]f such failure remains uncured for more than thirty (30) days following written notice of default from Lender to Borrower (a "Default Notice"); provided that if a failure to perform or default is not reasonably susceptible of cure within thirty (30) days, no Event of Default shall be deemed to have occurred if Borrower commences to cure the failure or default within thirty (30) days following receipt of a Default Notice and thereafter prosecutes to completion with diligence and continuity the curing thereof and cures such default within a reasonable time period.

*Id.*

Pivotal submitted several rezoning applications for the project. The final rezoning application submitted by Pivotal was approved by the Town of Parker on June 4, 2007 and was effective June 27, 2007. The revised zoning is encompassed in a new development plan and guide ("Anthology Development Plan" and "Anthology Development Guide"). Pivotal maintains that the Anthology plan provides for the same number of residential units on the property secured by the Deed of Trust and preserves all of the authorized land use categories provided by the SunMarke Development Plan.

On September 27, 2007, TMK sent Pivotal a letter claiming that the rezoning

constituted a breach of Paragraph 9(a) of the Deed of Trust.  The letter did not specify how or why the rezoning violated the Deed of Trust, but stated only:

> [O]ne or more of the land uses permitted under the prior zoning have been eliminated or the total number of residential units authorized under the prior zoning have been reduced, or both, without TMK's consent; and the value of the Property, as therein described, has been materially adversely affected, for which reasons TMK's consent was required and, within its discretion, is withheld.

Exh. L to Pivotal's Motion for Partial S. J. (doc no 92-14).  Pivotal responded with a letter on October 5, 2007, disputing that any breach occurred and requesting specific information about what land uses were claimed to have been eliminated, the total number of authorized residential units were claimed to have been eliminated, and how the value of the property had been reduced.  Exh. M to Pivotal's Motion for Partial S. J. (doc no 92-15).  TMK responded but stated that its notice had been adequate and provided no further detail.  Exh. N to Pivotal's Motion for Partial S. J. (doc no 92-16).

Plaintiff initiated this lawsuit seeking injunctive and declaratory relief, specifically seeking (1) a declaration that the September 27, 2007 letter was not sufficient notice of breach pursuant to the Deed of Trust; (2) a declaration that the rezoning did not require TMK's consent and therefore did not constitute a default; (3) a declaration that any failure of Pivotal to cure the alleged default within thirty days of receiving written notice does not constitute an Event of Default under the Deed of Trust; and (4) an injunction prohibiting TMK from accelerating the Note or exercising the power of sale provided by the Deed of Trust.  First Amended Complaint (doc no 19).

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

### Discussion

Pivotal seeks summary judgment first on the issue of whether TMK's notice of default was adequate.[2] Pivotal argues that the letter was insufficient and did not give Pivotal a meaningful opportunity to cure any alleged default. Pivotal also seeks summary judgment on the issue of whether the rezoning in fact established the conditions requiring TMK's consent. Because I conclude that TMK's notice was insufficient as a matter of law, I do not reach the merits of the rezoning question.

Interpretation of a contract is a question of law. *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation,* 9 P.3d 373, 376 (Colo. 2000). "A court's duty is to interpret a contract in a manner that effectuates the manifest intention of the parties at the time the contract was signed. The touchstone in determining the intention of the parties

---

[2]TMK's Motion for Partial Summary Judgment (doc no 87) seeks summary judgment on the same issue.

is the language of the written agreement. If the language is plain, clear and unambiguous, a contract must be enforced as written." *Randall & Blake, Inc. v. Metro Wastewater Reclamation Dist.*, 77 P.3d 804, 806 (Colo. App. 2003) (citations and internal punctuation omitted). Whether a contract is ambiguous is also a question of law for the court. *Pepcol Mfg. Co. v. Denver Union Corp.,* 687 P.2d 1310, 1314 (Colo. 1984). A contract is ambiguous when it is susceptible to more than one reasonable interpretation. *National Cas. Co. v. Great Southwest Fire Ins. Co.*, 833 P. 2d 741, 746 (Colo. 1992). If I conclude that a contract is ambiguous then its meaning is a question of fact to be determined by the jury or court. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 919 (Colo. 1996).

The parties do not argue that the contract terms are ambiguous and I agree. There is a clear intent expressed by the plain language of the contract to give Pivotal a reasonable opportunity to cure any alleged breaches of the Deed of Trust after notice. TMK, however, argues that neither Colorado law nor the contract imposes any specific level of detail for a notice to be sufficient. This argument is unavailing. At a minimum, TMK is required by its duty of good faith and fair dealing to perform obligations over which it has discretion in a reasonable manner. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo.1995) (every contract contains an implied duty of good faith and fair dealing which may be relied upon "when the manner of performance under a specific contract term allows for discretion on the part of either party.") "The good faith performance doctrine attaches to contracts 'to effectuate the intentions of the parties or to honor their reasonable expectations.'" *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006). Requiring a certain degree of specificity is also consistent with the law regarding analogous notices of alleged breach for sales of goods under the Uniform Commercial Code ("UCC"). *See, e.g., Hoffman's Double Bar Pine*

*Nursery v. Fyke,* 633 P.2d 516, 518 (Colo. App. 1981) (under Colorado UCC, "notice is adequate if it is sufficient to provide seller with the opportunity to investigate buyer's complaint, to correct an alleged defect, or to effect a settlement through negotiation.").

The plain meaning of Paragraph 4(b) provides Pivotal an opportunity to cure in the event of an alleged breach before default, with its severe attendant consequences, could be declared.  Even though the contract does not prescribe the contents of the notice of breach, thus giving TMK discretion, TMK had a good faith duty to provide sufficient detail to make the opportunity to cure a meaningful contract right.  *O'Reilly v. Physicians Mut. Ins. Co.*, 992 P.2d 644, 646 (Colo. App. 1999) (a breach of the duty of good faith and fair dealing occurs "when one party uses discretion conferred by the contract . . . to deprive the other party of the benefit of the contract.").

I conclude that TMK's notice was insufficient as a matter of law because it did not provide Pivotal with enough information to investigate or correct the alleged breaches.  The notice gave only alternative theories of breach in the most general terms without any explanation or detail.  Given the extensive nature of the zoning map and guidelines, the absence of detail makes any cure guesswork, at best.  TMK argues that Pivotal had sufficient information to know what TMK's concerns were because of letters written two years earlier about a different rezoning plan and raising different concerns than those alleged in the briefs here.  However, TMK made no reference to these issues in its notices or response to Pivotal.  This argument does not alter my legal conclusions that the plain meaning of the Deed of Trust gave Pivotal an opportunity to cure following adequate notice and TMK's notice was insufficient.

TMK's Second Motion for Partial Summary Judgment (doc no 90) relates to a

separate provision of the Deed of Trust. Paragraphs 20 and 21 of the Deed of Trust requires that Pivotal keep the property free of liens or other encumbrances. Specifically, the Deed of Trust provides:

> Borrower shall immediately pay and discharge from time to time when the same shall become due, all lawful claims and demands of mechanics, materialmen, laborers, realtors, brokers and others which, if unpaid, might result in, or permit the creation of, a lien, charge or encumbrance upon the Property or any part thereof, or on the Rents, arising therefrom; provided that Borrower shall have the right to contest, in good faith and in accordance with applicable Laws and procedures, mechanics', materialmen's and other such liens filed against the Property; provided however, that Borrower shall give written notice to Lender of its intent to bring such action, and Lender may, in Lender's sole discretion, require Borrower to post a bond or other collateral satisfactory to Lender (and acceptable to the title company insuring this Deed of Trust) as a result of Borrower's act.

Deed of Trust, ¶ 20. Paragraph 21 of the Deed of Trust is titled "Payment of Junior Encumbrances" and provides that "Borrower shall permit no default or delinquency under any other lien, imposition, charge or encumbrance against the Property, even though junior and inferior to the lien of this Deed of Trust."

In connection with Pivotal's purchase of the property, a dispute arose between Pivotal and Stroh Ranch Development, LLC and SDI, Inc. (together, "SDI"), both of whom share common ownership with TMK, concerning reimbursements allegedly paid by SDI to third parties. A stipulated judgment between Pivotal and SDI was approved in state court on or around February 15, 2008 in the amount of $411,200 ("SDI judgment"). SDI was represented by the same attorneys in the SDI Judgment as TMK in this matter. On or around March 5, 2008, SDI caused a Transcript of Judgment to be filed with the Clerk and Recorder for the County of Douglas, State of Colorado against the property.

In the interim, Pivotal, through counsel, was negotiating with SDI concerning terms to secure the judgment in the event Pivotal was unsuccessful with its post-trial motions. In an April 17, 2008 letter, SDI/TMK's counsel informed Pivotal's counsel that the transcript of judgment had been recorded and that Pivotal was now in breach of Paragraphs 20 and 21 of the Deed of Trust.  Exh. D to TMK's Motion for Partial S.J. (doc no 90-2).  Further negotiations and discussions ensued in which Pivotal's counsel requested that TMK clarify its position as to whether it would withdraw the notice of default if other collateral were deemed acceptable for the SDI judgment, and, specifically, whether TMK intended to proceed with its remedies under the Deed of Trust.  In response, counsel for SDI/TMK first stated that the affairs of SDI and TMK were separate, despite the common ownership and representation of these entities.  Thereafter, counsel for SDI/TMK responded in an April 18, 2008 email:

> I am authorized to relay that TMK does not presently intend to accelerate the Note or affirmatively exercise remedies under the Deed of Trust notwithstanding the event subject of TMK's Default Notice. In the event TMK changes its position, Pivotal will be informed of as much in time sufficient for it to enjoin or otherwise defend against such action.

Exh. C to Pivotal's Response to Motion for Partial S.J. (doc no 106-4).

Pivotal and SDI continued to attempt to resolve the issue of security for the SDI judgment; ultimately, Pivotal satisfied the judgment in full on or around July 24, 2008. Nonetheless, despite the representations made in the April email, counsel for TMK in a letter of July 11, 2008 declared that Pivotal had failed to cure the breach [i.e., the encumbrance created by the SDI Judgment] within thirty days of TMK's notice of default. TMK thereafter filed a counterclaim in this lawsuit regarding this alleged breach of the Deed

of Trust.

TMK contends that the transcript of judgment was a lien or encumbrance as described in Paragraphs 20 and 21 in the Deed of Trust and was therefore a breach, that TMK sent proper notice of default, and that Pivotal failed to cure within thirty days. Therefore, TMK argues that it is entitled to all the remedies in the Deed of Trust and/or the Note, including acceleration of the amount due on the Note and interest.  Pivotal argues in response that the representations in the April 18, 2008 email, in which TMK essentially stated that it would not proceed with its remedies without further notice, bar a declaration of default under theories of waiver or estoppel.  I agree.  Given the statements of TMK's counsel, there is at least an issue of fact as to whether TMK indicated that it was tolling the cure period pending further notice and that Pivotal justifiably relied on those representations to pursue its course of negotiation with SDI, rather than immediately paying the judgment. Accordingly, TMK is not entitled to summary judgment.

Pivotal argues in the alternative that the transcript of judgment was not the type of encumbrance intended by Paragraph 20 to establish a default or that Paragraph 20 gave Pivotal an opportunity to contest such liens, which it did.  Pivotal further argues that the language of Paragraph 20 permits a declaration of breach only if TMK demands security during the pendency of a challenge to an encumbrance and Pivotal fails to provide it; since TMK never made such a demand, it cannot declare a breach.  Similarly, Pivotal contends that the transcript of judgment was not a "default or delinquency under any other lien, imposition, charge or encumbrance" as contemplated by Paragraph 21.  In light of my previous determination, I need not reach these matters but note that it appears that there are also issues of fact regarding additional defenses Pivotal may have to the alleged

default.

Accordingly, it is ordered:

1. Plaintiff Pivotal Colorado II, LLC 's Motion for Partial Summary Judgment (doc no 91) is granted in part and denied in part as moot.  Pivotal is entitled to summary judgment regarding the adequacy of the notice of default provided by Defendant Triple M Beteiligungs-GMBH & CO KG.  Because this issue is dispositive, the remainder of the motion is denied as moot.

2. The Motions for Partial Summary Judgment (doc nos 87 and 90) filed by Defendant Triple M Beteiligungs-GMBH & CO KG are denied.

DATED at Denver, Colorado, on April 29, 2009.

BY THE COURT:


s/ Walker D. Miller
United States Senior District Judge